NO. 24-3391

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

JFXD TRX ACQ LLC, dba TRX,

*Plaintiff-Appellant*,

v.

&lt;TRX.COM&gt;, ET AL.

*Defendant-Appellee*.

---

On Appeal from The United States District Court,
for the District of Arizona, No. 2:23-cv-02330

Hon. Senior Judge Roslyn O. Silver

---

**APPELLANT'S OPENING BRIEF**

---

Alain Villeneuve, SVP & GC
Washington Bar No. 58664
JFXD TRX ACQ LLC dba TRX
1420 5th Avenue, Suite 2200
Seattle, WA 98101
Telephone: (312) 404-1569
avilleneuve@trxtraining.com

Attorney for Appellant
JFXD TRX ACQ LLC dba TRX

CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for JFXD TRX ACQ LLC, dba TRX certify that JFXD TRX ACQ LLC's parent corporation is JFXD Capital LLC, a Florida corporation. JFXD Capital LLC is not a publicly traded corporation.

Date: July 31st, 2024

/s/ Alain Villeneuve
Alain Villeneuve, SVP & GC
JFXD TRX ACQ LLC dba TRX
1420 5th Avenue, Suite 2200
Seattle, WA 98101
Telephone: (312) 404-1569
avilleneuve@trxtraining.com
Attorney for Appellant
JFXD TRX ACQ LLC dba TRX

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................1

II. JURISDICTIONAL STATEMENT ..................................3

III. ISSUES PRESENTED ..........................................................4

IV. STATEMENT OF THE CASE ............................................5

V. SUMMARY OF THE FIVE ARGUMENTS ......................6

VI. STANDARD OF REVIEW ..................................................7

VII. ARGUMENT ........................................................................8

    A.    ISSUE I: Reversal Of The Fee Motion Is Required Once Appellant Prevails on Co-Pending Appeal 24-1661 As Prevailing Party ........................................................................8

    B.    ISSUE II: Challenging A Minority 3-1 Split Or A Good Faith Realignment Of Law Does Not Lead To Sanctions And Fees Against The Litigant ..........................................................9

    C.    ISSUE III: The District Improperly Relied On External Cases As The Basis Of Its Exception Finding Under Octane ...........................12

    D.    ISSUE IV: The District Abused Discretion In Failing To Understand Strong Legal and Factual Arguments Distinguishing GoPets ............................................................14

    E.    ISSUE V: Most Of The Facts Are Erroneous Showing An Abuse of Discretion .......................................................19

VIII. CONCLUSION ................................................................22

STATEMENT OF RELATED CASES ..................................25

CERTIFICATE OF COMPLIANCE ....................................26

CERTIFICATE OF SERVICE................................................27

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996)...................................................................9

*Cooter Gell v. Hartmarx Corp*.,
   496 U.S. 384 (1990) ...................................................................8, 19

*DeVoll v. Burdick Painting, Inc*.,
   35 F.3d 408 (9th Cir.1994)...................................................................11

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011)...................................................*passim*

*Green v. Hotel Employees & Rest. Employees Int'l Welfare-Pension Funds*,
   105 F.3d 665 (9th Cir. 1997)...................................................................10

*Harman v. Apfel*,
   211 F.3d 1172 (9th Cir. 2000)...................................................................7

*K and N Eng. v. Bulat*,
   510 F.3d 1079 (9th Cir. 2007)...................................................................7

*Octane Fitness, LLC v. Icon Health & Fitness, Inc*.,
   572 U.S. 545 (2014) ...................................................*passim*

*Operating Engineers Pension Tr. v. A-C Co*.,
   859 F.2d 1336 (9th Cir. 1988)...................................................................11

*Professional Real Estate Investors, Inc., v. Columbia Pictures*,
   508 U.S. 49 (1993) ...................................................................9

*Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info*.,
   58 F.4th 785 (4th Cir. 2023)...................................................1, 6, 13, 22

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
   673 F.3d 1240 (9th Cir. 2012)...................................................................9

*Richard S. v. Dep't of Developmental Servs*.,
   317 F.3d 1080 (9th. Cir.2003)...................................................................7

ii

*In re Richards*,
   655 B.R. 782 (B.A.P. 9th Cir. 2023) ...................................................8

*Rodriguez v. Int'l Bhd. of Boilermakers*,
   14-CV-03537-LHK, 2016 WL 913440 (N.D. Cal. Mar. 10, 2016) ..................11

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
   179 F.3d 704 (9th Cir.1999)...................................................................7

*Sanders v. City of Newport*,
   657 F.3d 772 (9th Cir. 2011)...................................................................9

**Statutes**

15 U.S.C. § 1117 ...................................................................................7

15 U.S.C. § 1117(a)..................................................................*passim*

15 U.S.C. §§ 1121, 1125(d)(2)(A) ...............................................................4

28 U.S.C. § 1291 ...................................................................................4

28 U.S.C. §§ 1331, 1338 ...........................................................................4

ACPA ..................................................................................*passim*

Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).............1, 3, 13

Lanham Act .....................................................................................8, 13

Trademark Law, Internet Law...................................................................5

**Other Authorities**

Fed. R. Civ. P. 11(b)(2).....................................................................10, 11

Fed. Rule of Civil Procedure 7(b)(2)...........................................................10

Federal Rules of Appellate Procedure 4(a)(1)(A) .............................................4

House Report 106-412, Trademark Cyberpiracy Prevention Act,
   Purpose and Summary & Background. (October 25, 1999 – to
   accompany H.R. 3028).......................................................................24

135609.0004/9830049.1

## I. <u>INTRODUCTION</u>

Appellant owns the famous fitness brand TRX® acquired via a Chapter 11 repurchase.[1] It began to enforce its newly acquired trademark on a global scale. One key piece of the puzzle is the Uniform Resource Locator ("URL"), <trx.com>, which it believes to violate Appellant's rights under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA").

Appellant concluded as such based on the 4th Circuit issued *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info.*, 58 F.4th 785 (4th Cir. 2023) ("*Prudential*") in which a three-letter URL <pru.com> was returned to the brand in early 2023 under eerily similar facts. Appellant filed in Virginia where *Prudential* controls. Over objection from Appellant, the 4th Circuit moved this case to Arizona as one Judge in Arizona, denied consolidation finding this case different as to the merits and the parties.

The Arizona District Court denied a partial injunction based on *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) ("*GoPets*"). The District Court applied this Circuit's precedent instead of Virginia law, but Appellant was able to easily distinguish *GoPets* in a well-articulated legal and factual reply. (2:23-cv-02330, Dkt. #74, pages 2-5/7, ER-053-056). Appellant argued Appellee admitted buying

---

[1] This brief does not address the issues linked with pre-case issues, including Fitness Anywhere LLC and TRX Holdco LLC, the Chapter 11 seller now in Chapter 7.

135609.0004/9830049.1

from a site www.4.cn in April 2022, a site similar to www.godaddy.com a registrar selling in the public domain. Appellant for example distinguished *GoPets*:

> "When an individual registrant registers a domain name, she pays the registrar a fee and gives the registrar a registrant name, along with contact, billing, and technical information." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011). Going to a registrar, giving it a fee, a registrant name along with contact, billing, and technical information. Registration occurs under *GoPets* when a party first acquires a URL that can be acquired by anyone." (2:23-cv-02330, Dkt. #74, page 3/7, lines 11-16, ER-054).

Appellant even explained that given congressional intent of the ACPA evidenced every three-letter URLs were initially pirated (2:23-cv-02330, Dkt. #74, page 4-5/7, ER-055-056) and noted the Appellee contact given in 2022 was false. (2:23-cv-02330, Dkt. #74, page 4-5/7, ER-055-056). The District Court on its own initiative asked for a full brief on the issue. Appellant offered a full brief on the issue in a timely fashion, once again distinguishing the case based on well-founded legal arguments based on facts of the case. (2:23-cv-02330, Dkt. #83, ER-040). The District Court refused to read the legal arguments presented.  Further, despite never seeing or speaking to a party in this matter, scolded the Appellant: "Moreover, awarding fees might dissuade JFXD from pursuing such tactics in the future." (2:23-cv-02330, Dkt. #103, page 9, lines 26-27, ER-012). It is unclear what are those tactics.

2

First, Appellant if it prevails on co-pending case No. 24-1661, the grant must be reversed as a matter of law since 15 U.S.C. § 1117(a) provides recovery to a prevailing party and in the case at hand. Advocacy distinguishes and tries to narrow a precedent also in a controversial split in Circuit and such effort does cannot reasonably lead to sanctions. The District Court also impermissibly imported pre-case facts trying to find wrongdoing under *Octane Fitness, LLC v. Icon Health & Fitness, Inc*., 572 U.S. 545, 554 (2014) ("*Octane*"), a case-specific standard. The District Court's refusal to give any weight to two full briefs that easily distinguish *GoPets* application to this case is a clear abuse of discretion. The decision also sadly relies on false facts in at least nine instances which is also an abuse of discretion.

Here, the violator of the ACPA goes free and the District Court sanctions the brand owner for daring to file this case in Virginia where it prevails. The District Court also uses out-of-case facts to sanction and misreads its own precedent in a way that eviscerates the APCA in quite a harsh tone against a party it has never seen.

## II. <u>JURISDICTIONAL STATEMENT</u>

This case relates the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"). It was filed in the Eastern District of Virginia, not the 9th Circuit. It was transferred under objection from Appellant. (2:23-cv-00217,

3

#59, ER-0). Jurisdiction is found pursuant to 15 U.S.C. §§ 1121, 1125(d)(2)(A) and 28 U.S.C. §§ 1331, 1338.

This Court has jurisdiction on final decisions of district courts under 28 U.S.C. § 1291 finding fees under 15 U.S.C. § 1117(a) on May 8, 2024. (2:23-cv-02330, Dkt. #103, ER-004), A notice of appeal was filed on May 28, 2024 (2:23-cv-02330, Dkt. #105, ER-096), this notice, filed within 30 days of the ruling is timely under Federal Rules of Appellate Procedure 4(a)(1)(A).

### III. <u>ISSUES PRESENTED</u>

**Issue I:** Reversal in co-pending Appeal No. 24-1661 on the merits requires dismissal of the grant of fees under 15 U.S.C. § 1117(a) as the Appellee is not a prevailing party.

**Issue II:** The legal challenge of a 3-to-1 split between Circuits or the failure by the District Court to apply the proper law, cannot support a finding of exception warranting fees under 15 U.S.C. § 1117(a) and the *Octane* test as litigants who advance the law should not be scolded and sanctioned but rewarded.

**Issue III:** The use of out-of-case elements as support for a determination of exception under 15 U.S.C. § 1117(a) and *Octane* is improper as only the case at hand should be used.

**Issue IV:** A refusal to acknowledge or understand Appellant's good faith legal and factual justifications over the span of two timely briefs that easily

4

135609.0004/9830049.1

distinguish *GoPets* is a first reversable abuse of discretion.

**Issue V:** The misuse of at least nine different easily demonstrable false factual elements supporting the finding of fees under 15 U.S.C. § 1117(a) and the Supreme Court precedent of *Octane* is an abuse of discretion.

### IV.  <u>STATEMENT OF THE CASE</u>

URL technology is complex. The ACPA sits at the intersection of Trademark Law, Internet Law and International Law and as such, this field is understandably challenging to courts and litigants alike. *GoPets* stands criticized and distinguished by all three sister circuits who have reviewed it, and in this case, Appellant believes Virginia Law should control. (2:23-cv-02330, Dkt. #93, ER-029). *GoPets* does not destroy the ACPA, it stands for the distinction between acts of "registration" whom the ACPA applies to other acts of "re-registration" insulated from the ACPA.

*GoPets* was easily distinguished from the present facts, in 2022, the URL likely was purchased from a registrar, a website called www.4.cn where anyone can buy it and likely fell. (2:23-cv-02330, Dkt. #74 & #83, ER-052 & ER-040). But it seems like the District Court is genuinely upset: "Moreover, awarding fees might dissuade JFXD from pursuing such tactics in the future." (2:23-cv-02330, Dkt. #103, page 9, lines 26-27, ER-012). The District Court used unrelated unverified facts and conclusions to scold the Appellant. To the District Court,

5

unless a brand can plead ownership predating the great piracy of 1999 which inspired the ACPA, a litigant should be sanctioned.

## V. <u>SUMMARY OF THE FIVE ARGUMENTS</u>

Congress enacted the ACPA to protect brand owners, not sanction them. Here Appellant owns the twenty-year-old brand TRX® and the URL is <trx.com>, purchased online from a database in 2022, decades after the brand. *GoPets* simply is irrelevant. Furthermore, Appellant filed at the 4th Circuit weeks after *Prudential* in which a three-letter URL <pru.com> was returned to the brand in early 2023 under eerily similar facts. At least five reasons, each alone sufficing, are given to reverse the strange penalty on the brand owner. ("Moreover, awarding fees might dissuade JFXD from pursuing such tactics in the future." (2:23-cv-02330, Dkt. #103, page 9, lines 26-27, ER-012)). The tactics are daring to seek redress under the ACPA from an elusive and secretive party.

First, Appellant if it prevails on co-pending Appeal No. 24-1661 cannot be awarded fees as under 15 U.S.C. § 1117(a), only a prevailing party can secure fees. **(Issue I)**. The co-pending Appeal No. 24-1661 outlines five reasons, one alone is sufficient. Courts are not in the habit of sanctioning and admonishing litigants who face splits in circuits or District courts gutting a law and misreading a precedent. **(Issue II).** It is not sanctionable or punishable to seek justice.

Unable to find problems with this short-lived case, the District Court

6

impermissibly imported pre-case facts under *Octane*, a case-specific standard. (**Issue III**). Troubling, the District Court refused to give any weight to two full briefs that easily distinguish *GoPets* is a clear abuse of discretion. (**Issue IV**). Sadly, the decision, relies on numerous false facts, easily demonstrably false, also in an abuse of discretion. (**Issue V**). *GoPets* was never designed to eviscerate the ACPA, sanction brand owners and set precedents to protect those Congress wanted to sanction. The District Court not only let a violator of the ACPA free but also sanctioned Appellant on fees for daring to file in Virginia.

## VI. <u>STANDARD OF REVIEW</u>

"[D]ecisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000), *quoting Pierce v. Underwood,* 487 U.S. 552, 558 (1988).

On appeal of the attorney's fees under 15 U.S.C. § 1117 is reviewed for an abuse of discretion, *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir.1999), and review the district court's legal analysis and statutory interpretation de novo. *Richard S. v. Dep't of Developmental Servs*., 317 F.3d 1080, 1086 (9th. Cir.2003). "A district court abuses its discretion if its ruling on a fee motion is based on an inaccurate view of the law. . . ." *Richard S.* at 1085-86

(internal quotation marks omitted) quoted in *K and N Eng. v. Bulat*, 510 F.3d 1079 (9th Cir. 2007); *Cooter Gell v. Hartmarx Corp*., 496 U.S. 384, 401 (1990) ("A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous."). Issues I, II, and III are believed to be reviewed de novo and Issues IV and V for an abuse of discretion.

## VII.  ARGUMENT

### A.  ISSUE I: Reversal Of The Fee Motion Is Required Once Appellant Prevails on Co-Pending Appeal 24-1661 As Prevailing Party

The District Court dismissed the action with prejudice and without leave to amend. Dismissal was based upon a strange reading of *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011). (2:23-cv-02330-ROS, Dkt. 88, ER-035). Co-pending Appeal No. 24-1661 challenges on multiple grounds the dismissal, for example as applying the wrong law, misapplication of *GoPets* as controlling, challenging *GoPets* in split on a national level, and how *GoPets* is construed.

The grant of fees is based on the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). If Appellant prevails on Appeal No. 24-1661, the Appellee is no longer a prevailing party and the fees must be reversed. In addition, fees must also be dismissed if the Circuit finds the wrong law was applied. *In re Richards*, 655 B.R. 782, 799 (B.A.P. 9th Cir. 2023)(applying a State law fee shifting statute)("Reversal

8

of a fee award "is appropriate where there is no reasonable basis for the ruling or the trial court has applied the wrong test or standard in reaching its result"). Fees generally should also be dismissed if the precedent is altered or reversed. *Sanders v. City of Newport*, 657 F.3d 772, 784 (9th Cir. 2011)("Because Sanders is no longer the prevailing party on her OFLA claim, an award of attorney's fees and costs is premature. We therefore vacate the order granting attorney's fees and costs to Sanders."); *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1248 (9th Cir. 2012)("Our reversal of the district court's judgment on R & R's claims necessitates reversal of the district court's award of costs as well."; *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996), as amended (Jan. 15, 1997)("Where a reviewing court reverses a district court's judgment for the prevailing party, however, both the underlying judgment and the taxation of costs undertaken pursuant to that judgment are reversed."). Prevailing on any of the five issues on co-pending appeal No. 24-1661 requires dismissal of the fees granted against the Appellant.

**B.** **ISSUE II: Challenging A Minority 3-1 Split Or A Good Faith Realignment Of Law Does Not Lead To Sanctions And Fees Against The Litigant**

As articulated in co-pending Appeal No. 24-1661, *GoPets* stands distinguished by three other Circuits. The Supreme Court noted that an "unsettled condition of the law" in the circuit courts regarding copyright issue such that a

reasonable litigant could have expected a favorable outcome by commencing suit, is not sham litigation. *Professional Real Estate Investors, Inc., v. Columbia Pictures*, 508 U.S. 49, 64-65 (1993).

This Circuit, in *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) helped Mr. Hise survive against an ACPA claim under very unique facts and created a criticized "re-registration" doctrine broadened at the District Court into *de facto* eviscerating the ACPA to brands from this century. To the District Court, brands must date back to the 20th Century at filing or attorneys must be sanctioned. Assuming *arguendo* 9th Circuit law applies, parties who endeavor to realign splits in law or correct misapplied precedents at the District Court level perform a public service. Rule 11, setting the proper tone of documents filed excludes from sanctions any effort to "present[] to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it … claims .. warranted by … nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…" Fed. Rule of Civil Procedure 7(b)(2). Good lawyering includes extending, modifying, reversing, or establishing new law. In this case, a purchase URL from websites like GoDaddy® or 4.CN® places buyers back into the ACPA reach.

Rule 11 protects lawyers as they try to improve the judicial system or defend reasonable legal positions. *Green v. Hotel Employees & Rest. Employees Int'l*

10

*Welfare-Pension Funds*, 105 F.3d 665 (9th Cir. 1997), held that arguments that were supported by case law outside the Ninth Circuit meant fees were not warranted because the argument was not frivolous. "In fact, neither she nor Welfare Fund is entitled to recover fees under Section 1132 because both parties presented nonfrivolous arguments supported by case law from outside of this circuit. E.g., *DeVoll v. Burdick Painting, Inc*., 35 F.3d 408, 414 (9th Cir.1994) (declining to award fees to either party where the losing party's arguments were not frivolous and were supported by case law from outside of the Ninth Circuit); *Rodriguez v. Int'l Bhd. of Boilermakers*, 14-CV-03537-LHK, 2016 WL 913440, at *4 (N.D. Cal. Mar. 10, 2016)(internal citations omitted)("To be legally frivolous, a claim must not be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). It must be patently clear that a claim has absolutely no chance of success under the existing precedents, and...no reasonable argument can be advanced to extend, modify or reverse the law as it stands."); *Operating Engineers Pension Tr. v. A-C Co*., 859 F.2d 1336, 1344 (9th Cir. 1988)(internal citations omitted: Courts must also "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted." The simple fact that an attorney's legal theory failed to persuade the district court "does not demonstrate that [counsel] lacked the requisite

11

good faith in attempting to advance the law." Rather, we reserve sanctions for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.)

While *Octane* differs from the Rule 11 standard, the District Court writes: "This case stands out from others in both the frivolousness and objective unreasonableness of JFXD's behavior. It would be unjust to require Ming bear the cost of litigating against unintelligible factual and legal positions. Moreover, awarding fees might dissuade JFXD from pursuing such tactics in the future." (2:23-cv-02330-ROS, Dkt. 103, ER-004). The ACPA exists in the 9th Circuit and a party who buys post-brand arrival from an online marketplace / registrar a URL should be subject to the cyber-piracy law and the party victim of cyber-piracy should not be proverbially thrown out of the Court sight unseen.

## C.    ISSUE III: The District Court Improperly Relied On External Cases As The Basis Of Its Exception Finding Under *Octane*

Trademark law's fee provision reads: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In 2014, guidance was offered by the U.S. Supreme Court: "We hold, then, that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-

by-case exercise of their discretion, considering the totality of the circumstances."
*Octane Fitness, LLC v. Icon Health & Fitness, Inc*., 572 U.S. 545, 554
(2014)(emphasis added). *Octane* and the Lanham Act specifically connect fees
with the case litigated on a case-by-case basis.

Appellant filed this count of cyber-piracy under the ACPA in Virginia days
after the 4th Circuit roadmap in *Prudential* was issued. This case was transferred
over Appellant's objection. (2:23-cv-02330, Dkt. 42, 51, 53, and 59: ER-070, ER-
065, ER-060, ER-059). Judge Steven P. Logan of the District Court of Arizona
denied consolidation between this case (2:23-cv-02330 - JFXD TRX ACQ LLC v.
<trx.com> et al.), and the unrelated case (2:22-cv-02042 - Ming v. Fitness
Anywhere LLC). (2:23-cv-02330, Dkt. 77, ER-049). The Judge explained: "It is
true that both cases concern the internet domain name <trx.com>. However, the
legal theories asserted in both cases vary greatly. The cases also involve different
questions of law and fact and different defendants. One case involves allegations of
fraud that allegedly took place during a prior proceeding before an administrative
panel. But the other case alleges claims under the Anticybersquatting Consumer
Protection Act (15 U.S.C. § 1125(d))." (2:23-cv-02330, Dkt. 77, ER-049). Cases
2:23-cv-02330 and 2:22-cv-02042 are different, unrelated.

In granting fees under 15 U.S.C. § 1117(a), the District Court wrote:
"Understand why the present case qualifies as "exceptional" requires looking to

13

events that occurred long before this suit was filed as well as the proceedings in a separate case. Those background facts, <u>combined</u> with the weakness of JFXD's arguments and positions asserted in this case, render this case exceptional." (2:23-cv-02330, Dkt. No. 103, ER-004) (emphasis added). The District Court admits the arguments and positions in this case alone are insufficient to render the case exceptional and must be combined with external facts. Section II of the fee opinion is titled "Events Before Present Suit" and provides two full pages quotes the record from case 2:22-02042 four times. As a matter of law, a grant of fees based on a determination of exceptional conduct under *Octane* requires a finding that this case is exceptional, not what counsel for Appellant. Here, the reliance on external facts, admitted to be required for the finding of exception is an error and requires overturning the decision to grant fees.

## D. ISSUE IV: The District Court Abused Discretion In Failing To Understand Strong Legal and Factual Arguments Distinguishing *GoPets*

The District Court wrote, "JFXD and its counsel were unable to present intelligible factual or legal arguments, leaving Ming and the Court to guess as to why JFXD believed its cybersquatting claim was viable… … Rather, JFXD consistently maintained, without explanation, that *GoPets* did not apply in the case because of factual differences." (2:23-cv-02330, Dkt. 103, ER-004). "This case stands out from others in both the frivolousness and objective unreasonableness of JFXD's behavior. It would be unjust to require Ming bear the cost of litigating

14

against unintelligible factual and legal positions." (2:23-cv-02330-ROS, Dkt. 103, ER-004).

This is demonstrably false are easily articulated in the brief of co-pending Appeal No. 24-1661. The dismissal itself made no sense. But Appellant's arguments, both legally and factually presented are clear, simple, and extremely detailed and comprehensive. They total 10+ pages over two briefs. In the first filing, Appellant explained:

> The 9th Circuit reminded us of the fact of what is a registration: "When an individual registrant registers a domain name, she pays the registrar a fee and gives the registrar a registrant name, along with contact, billing, and technical information." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011). Going to a registrar, giving it a fee, a registrant name along with contact, billing, and technical information. Registration occurs under *GoPets* when a party first acquires a URL that can be acquired by anyone.

> The Mr. Ming identity explained: "… Plaintiff [Mr. Ming] is the registrant of a domain name which has been suspended, disabled, or transferred under a policy provided by the registrar thereof…" (Exhibit R-1, Case 2:22-cv-02042, Document 1, ¶ 4). "Recently, the Plaintiff became interested in investments in digital assets, and was advised that the internet domain name TRX.com was available for sale." Id. ¶ 10. "After learning that non-distinctive short domain names have substantial value, Plaintiff was informed the Domain Name was available for purchase, and the Plaintiff purchased the Domain Name

15

TRX.com in April 2022, more than $138,000 in out of pocket costs through a brokerage service provided by an internet domain name marketplace where it was for sale." Id. ¶ 16. "The Domain Name was available for purchase through a publicly accessible internet brokerage at www.4.cn. Prior to Plaintiff's purchase of the Domain Name at substantial cost, any other person, including Defendant could have purchased the Domain Name on the same terms." (emphasis added). Id. ¶ 18. "Plaintiff arranged to have the Domain Name resolve to a "for sale" page through which prospective purchasers could express interest in obtaining the Domain Name." Id. ¶19.

(2:23-cv-02330, Dkt. 74, ER-052). Appellant explained that *GoPets* clearly provides that purchase from websites like GoDaddy® or 4.CN®, public brokerages qualify as "registration" and are not "re-registrations." It is sad to read that the District Court was unable to understand these simple arguments. To the District Court, once a URL is born (and every word and 1-4 letter URLs were both in 1999), then the ACPA no longer applies. The District Court even wrote: "JFXD's reply acknowledged *GoPets* but argued, for indecipherable reasons, the Court should not follow *GoPets*. It was unreasonable for JFXD to file a reply that did not contain any plausible argument that *GoPets* did not bar the cybersquatting claim." (2:23-cv-02330, Dkt. 103, page 5/10, lines 13-16, ER-008). The arguments are plausible and very simple. *GoPets* does not stand for the strange notion that post birth of a URL, the URL cannot be cyber-squatted.

16

As it asked Appellant for more, a nine-page brief, very well-articulated with color inserts, sections connected the claim *GoPets* simply does not apply to these facts. (2:23-cv-02330, Dkt. #83, ER-040). The brief is exhaustive, has many sections and arguments and even included research of ownership from 1999 to 2023. (2:23-cv-02330, Dkt. #83, ER-040). The brief begins with a section titled "Registration v. Re-Registration under GoPets" to explain the distinction. (2:23-cv-02330, Dkt. #83, ER-040). The last paragraph of this section reads:

> The 9th Circuit also clearly explained: "When an individual registrant registers a domain name, she pays the registrar a fee and gives the registrar a registrant name, along with contact, billing, and technical information. The words "registration" and "register" are not defined in ACPA. It is obvious that, under any reasonable definition, the initial contract with the registrar constitutes a "registration" under ACPA." Id. at 1031 (emphasis added). Buying from a registrar is a registration and the ACPA and applies at the time of this contact / purchase. Re-registration occurs when the first buyer sells or alters the registrar contact to a new party in comity. A party who owns a URL and fails to renew it sees the URL fall back to the public domain back to a registrar and a new cycle begins with registration as the first act. (2:23-cv-02330, Dkt. #83, Section I, page 3/9, lines 9-17, ER-042)(emphasis in original brief).

Using a car analogy, the District Court argues once a car is sold by a dealership and placed in circulation the law cannot be violated. Appellant argues if

17

the car is abandoned on the side of the road, finds its way back to a dealership, then – at a minimum - the law applies. All other Circuits found that any exchange or change of ownership has the law apply. Appellant pointed to the portion which made it clear initial contact with a registrar is "registration." It seems like the District Court Judge, having never seen, spoken Appellant limits the "initial contact with the registrar" to the 1999 creation of the URL and not the return of the URL to a registrar for failure to pay renewal or abandonment. Section II of the brief is then titled "Selling URLs Cannot Be Re-Registrations As This Leads To A Non-Sensical Application Of The Law." (2:23-cv-02330, Dkt. #83, ER-040). Appellant is very clear as to the notion that sale by a registrar is not "re-registration." At Section IV it explains that <trx.com> fell to the public domain around 2020-2022, and at Section V the Defendant admitted buying the URL in 2022 from a registrant. (2:23-cv-02330, Dkt. #83, ER-040).

It is quite the abuse of discretion to write, "JFXD and its counsel were unable to present intelligible factual or legal arguments, leaving Ming and the Court to guess as to why JFXD believed its cybersquatting claim was viable… … Rather, JFXD consistently maintained, without explanation, that *GoPets* did not apply in the case because of factual differences." (2:23-cv-02330, Dkt. 103, ER-004). "It would be unjust to require Ming bear the cost of litigating against unintelligible factual and legal positions." (2:23-cv-02330-ROS, Dkt. 103, ER-

18

004). These briefs are not unintelligible, have factual and legal positions that are clear, simple and honestly prevailing under every set of circumstances.

**E.   ISSUE V: Most Of The Facts Are Erroneous Showing An Abuse of Discretion**

This Circuit must find abuse of discretion if factual findings of the District Court are clearly erroneous. *Cooter Gell v. Hartmarx Corp*., 496 U.S. 384, 401 (1990). This is rather easy to demonstrate. In this unique case, there has been no answer, no hearing, no verified facts, no confirmation of any type and the District Court has cancelled hearings and never seen or spoken to the litigants. The facts here are not simply what is plead, but drawn and taken from random sources. The number of erroneous factual findings in the opinion are very numerous and easily demonstrable in the record itself. For example:

Error of Fact 1: The District Court writes: "As of 2022, Defendant Ming had owned <trx.com> for approximately four years." (2:23-cv-02330-ROS, Dkt. 103, ER-004). The statement of record (coherent with the Amended Complaint) establishes acquisition on May 17, 2022, at 5:00:19 AM. (2:23-cv-02330, Dkt. 42-1, Att. 1, Exhibit 1, ER-085). This simple fact is wrong and not even supported by the record or any statement from litigants and their counsels.

Error of Fact 2: "In 2018, attorney Alain Villeneuve began providing "IP legal services" to Fitness Anywhere." (2:23-cv-02330, Dkt. 103, page 2/10, lines

19

17-18, ER-005). The quoted document in fact reads: "Prior to June 2018, Mr. Villeneuve provided IP legal services to the Debtor at his prior law firm." (2:23-cv-02330, Dkt. 95-7, ER-014). Mr. Villeneuve is attorney of record and litigant of California Northern District Court No. 3:14-cv-01725 (*Fitness Anywhere LLC v. Woss Enterprises LLC*). The District Court points to a different record and misquotes the portion at hand which specifically says the reverse.

Error of Fact 3: "Mr. Hetrick began selling that gym product through a company known as Fitness Anywhere LLC." (2:23-cv-02330, Dkt. 103, page 2/10, lines 14-15, ER-005). That is also incorrect. Fitness Anywhere LLC was created in 2011 and is listed as such on the California Secretary of State records. It began selling the products via Fitness Anywhere Inc. and that entity was part to some extend of the Chapter 11 event.

Error of Fact 4: "Despite Fitness Anywhere no longer owning any intellectual property, Mr. Villeneuve continued to work for Fitness Anywhere in some capacity." (2:23-cv-02330, Dkt. 103, page 3/10, lines 9-11, ER-006). This is unfounded, unsupported and incorrect.

Error of Fact 5: "In November 2022, a decision was issued by the nongovernmental entity concluding <trx.com> should be transferred to Fitness Anywhere unless Ming filed suit in Arizona." (2:23-cv-02330, Dkt. 103, page 2/10, lines 22-23, ER-005). This is incorrect. Paragraph 3(b)(xiii) of UDRP rules

20

on Mutual Jurisdiction gave jurisdiction in the WHOIS database address of record.

Error of Fact 6: "JFXD did not offer any explanation to the Virginia court why it had sued Ming if JFXD believed Ming was not the owner of <trx.com>." (2:23-cv-02330, Dkt. 103, page 4/10, lines 24-25, ER-007). Appellant opposing the venue change offered the Virginia court explanation. (2:23-cv-02330, Dkt. 51, Section I, ER-066).("For instance, no receipts or bank records have been provided. Simply put, nothing in the filings by Mr. Ming provide evidence that Mr. Ming owns the domain name at issue other than his conclusory assertion which are contradicted by the face of the official records of the domain registration.").

Error of Fact 7: "It was undisputed <trx.com> was not currently owned by a "registrar." Thus, JFXD's statement that <trx.com> was owned by a "registrar" was inexplicable." (2:23-cv-02330, Dkt. 103, page 6/10, lines 5-7, ER-007). Appellant disputed this fact but the Court failing to understand dismissed them. (2:23-cv-02330, Dkt. 103, page 6/10, lines 8-17, ER-007).

Error of Fact 8: "The decision to ignore the Court's Order requiring an explanation addressing ownership was unreasonable." (2:23-cv-02330, Dkt. 103, page 6/10, line 28 to page 7/10, line 29, ER-007-008). Appellant fully complied, filed in the record a letter in response of ownership. (2:23-cv-02330, Dkt. 89, ER-030). Also both briefs filed also addressed the issue of ownership. (2:23-cv-02330, Dkt. 74, 83, ER-052, ER-040).

21

Error of Fact 9: "More importantly, JFXD's position had always been that Ming purchased <trx.com> for $138,000 through an "internet brokerage." (Doc. 74 at 3)." (2:23-cv-02330, Dkt. 103, page 7/10, lines 6-8, ER-010). This is false. The quoted portion at Doc. 74, reads: "The Mr. Ming identity explained: "… "After learning that non-distinctive short domain names have substantial value, Plaintiff was informed the Domain Name was available for purchase, and the Plaintiff purchased the Domain Name TRX.com in April 2022, for more than $138,000 in out of pocket costs through a brokerage service provided by an internet domain name marketplace where it was for sale." Id. ¶ 16." (2:23-cv-02330, Dkt. 74, page 3, lines 17-27, ER-054). Appellant has never concluded on unverified statements from an unverified identity in Malaysia. The story told in this case, as carefully plead is unverified, has flavors of fraud from a missing third party. No discovery has been secured, no identity has been proven and Appellant was careful never to represent these claims as its own position or an admitted fact.

## VIII. CONCLUSION

Appellant filed this case early 2023 in Virginia on the heels of *Prudential* giving the owner of the brand PRUDENTIAL® the URL <pru.com>. The URL <trx.com> likely is pirated and the owner of TRX® should be able to establish a case of bad faith and prevail under the ACPA. ICANN® even already found this case to be piracy, but the District Court sanctions the brand owner and Appellant

22

remains unclear why, it has never spoken or seen the District Court Judge or a Magistrate. This case took a twist when Applicant returning to the 9th Circuit faced an all-encompassing interpretation of *GoPets*. How can a party be accused of abuse of process when a case that prevails in Virginia is sent to Arizona against its will. No litigant should factor the split law of other Circuits. Furthermore, *GoPets* can and was easily distinguished but the District Court simply refuses to read these arguments.

Appellant as the brand owner needs the ACPA, a law passed by Congress to help brand owners caught in this precise set of circumstances, to protect its commercial interests. Congressional reports read in part:

> Much testimony has been gathered evidencing the practice of cybersquatters who register numerous domain names containing American trademarks or tradenames only to hold them ransom in exchange for money. Sometimes these pirates put pornographic materials on theses sites in an effort to increase the likelihood of collecting ransom by damaging the integrity of a mark. The time has come for this practice to stop. The legal recourse provided for in this legislation, combined with the intellectual property alternative dispute resolution procedures being adopted by the domain name registrars, will give trademark owners important tools to protect their intellectual property. This is a measured and balanced response to a growing problem, and will clarify that trademark property rights are respected as the Internet continues to grow.

135609.0004/9830049.1

….

Currently, the legal remedies available to trademark owners to prevent cyberpiracy are both expensive and uncertain. Federal courts have generally found in favor of the owner of a trademark where a similar or identical domain name is actively used in connection with a cyberpirate's Web site. <u>The law is less settled, however, where a cyberpirate has either registered the domain name and done nothing more,</u> or where the cyberpirate uses a significant variation on the trademark. Regardless of the ultimate outcome of litigation, trademark owners must expend significant resources and endure the inevitable delay associated with bringing a civil action in order to validate their rights. Many companies simply choose to pay extortionate prices to cyberpirates in order to rid themselves of a potentially damaging headache with an uncertain outcome. For example, Gateway recently paid $100,000 to a cyberpirate who had placed pornographic images to the Web site ``www.gateway20000.''

House Report 106-412, Trademark Cyberpiracy Prevention Act, Purpose and Summary & Background. (October 25, 1999 – to accompany H.R. 3028)(emphasis added). Fees here are abusive and shocking. Appellant kindly asks the Court to reverse this award for one of the numerous enumerated reasons above.

Date: **August 6th, 2024**

> */s/ Alain Villeneuve*
> Alain Villeneuve
> Attorney for Appellant
>
> *JFXD TRX ACQ LLC, dba TRX*

24

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**: **No. 24-3391**

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[x] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**No. 24-1661: Dismissal of Pleading With Prejudice.**

**Signature:** */s/* Alain Villeneuve_          **Date: August 6th, 2024**

25

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s): No. 24-3391**

I am the attorney or self-represented party.

**This brief contains _____ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/* Alain Villeneuve             **Date: August 6th, 2024**

26

135609.0004/9830049.1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**Signature:** *s/* Alain Villeneuve                    **Date: August 6th, 2024**

27